| | |
|---|---|
| **Fill in this information to identify the case:** | |
| Debtor Name: Twisted Oak Winery, LLC | |
| United States Bankruptcy Court for the Eastern District of California | |
| Case number: __21-90484__ | |

☒ Check if this is an amended filing

Official Form 425A

# Third Amended Plan of Reorganization for Small Business Under Chapter 11

**Twisted Oak Winery, LLC's Plan of Reorganization, Dated October 4, 2021**

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. §1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

**Background for Cases Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

The Debtor is a Limited Liability Company. Since 2002, the Debtor has been in the business of growing grapes, making and bottling wine, leasing a tasting room, and hosting events.

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as

A liquidation analysis is not attached to the Plan because it is such a simple analysis.

With rare and nominal exceptions, all of the Debtor's assets have been pledged to secure the Mechanics Bank and SBA loans.

The primary assets of the Debtor are the wine making equipment which is fixed and not for sale and inventory. At the commencement of the Chapter 11 case, the Debtor advised SBA that it would have a replacement lien on post-petition inventory and accounts which would otherwise be free of the security interest under 11 U.S.C. § 552(a) in exchange for allowing the use of the nominal cash collateral.

By contrast, the Plan provides for a dividend of 100% on general unsecured claims.

**C. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit A**. The Debtor believes future periods of time will improve and that it's projections will show that Debtor will have the projected disposal income (as defined by § 1191(d) of the Bankruptcy code) for the period described in § 1191(c)(2).

All of the Debtor's projected disposal income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) will be applied to make payments under the Plan.

The final Plan payment is expected to be paid on December 1, 2026.

Debtor Name: __Twisted Oak Winery, LLC__　　　　Case Number: __21-90484__

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Twisted Oak Winery, LLC (the *Debtor*) from cash flow from future operations over a 60-month period.

This Plan provides for:
- **0** classes of priority claims;
- **2** classes of secured claims;
- **1** classes of non-priority unsecured clams; and
- **1** classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **100** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

2.01 **Class 1** — All allowed claims entitled to priority under §507(a) of the Code (except administrative expense claims under §507(a)(2), and priority tax claims under §507(a)(8)).
None

2.02 **Class 2** — The claim of Mechanics Bank, to the extent allowed as a secured claim under §506 of the Code.

2.03 **Class 3** — The claim of U.S. Small Business Administration (SBA), to the extent allowed as a secured claim under §506 of the Code.

2.04 **Class 4** — All non-insider non-priority unsecured claims allowed under §502 of the Code.

2.05 **Class 5** — All insider non-priority unsecured claims allowed under §502 of the Code.

2.06 **Class 6** — Equity interests of the Debtor.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01 **Unclassified Claims** — Under section §1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under §502(f) of the Code,] and priority tax claims are not in classes.

3.02 **Administrative Expense Claims** — Each holder of an administrative expense claim allowed under §503 of the Code, [and a "gap" claim in an involuntary case allowed under §502(f) of the Code,] will be paid in full on the effective date of this Plan, in cash, *or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.*

Debtor Name:   Twisted Oak Winery, LLC　　　　　　　Case Number:   21-90484

|  |  |  |
|---|---|---|
|  |  | The two administrative expense claims are Brian S. Haddix, attorney for the Debtor, whose fee beyond the retainer are estimated to be no more than 20,000, and Lisa Holder, the Subchapter V Trustee, whose fees are estimated at $5,000. |
| 3.03 | **Priority Tax Claims** | No known Priority Claims |
| 3.04 | **Statutory Fees** | All fees required to be paid under 28 U.S.C. §1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective Quarterly Fees** | All quarterly fees required to be paid under 28 U.S.C. §1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interest shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – **Priority Claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Debtor does not anticipate any Priority Claims. In the event, however, that a Priority Claim is allowed, Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2 – **Secured Claims** of Mechanics Bank | ☒ Impaired<br>☐ Unimpaired | Class 2 is impaired by this Plan. Mechanics Bank shall retain its security interest according to the instruments and statutes creating same. Class 2 principal shall be paid in full with interest at 4.50% per annum on 25 years amortization with a January 1, 2033 maturity date, with interest and principal payments of $10,557 per month, commencing October 1, 2022 and continuing for 123 months, then a balloon payment for the remaining balance due January 1, 2033.<br>Class 2 accrued pre-petition interest shall be paid in full with 0% interest per annum in the amount of $1,000 per month, commencing October 1, 2022, then a balloon payment for the remaining balance due January 1, 2033. |
| Class 3 – **Secured Claims** of SBA | ☐ Impaired<br>☒ Unimpaired | Class 3 is unimpaired by this Plan, and Class 3 will be paid pursuant to the terms of the original documents with no modification by this Plan. The monthly payment is currently $0 and payments are current. |
| Class 4 – **Non-insider non-priority unsecured creditors** | ☐ Impaired<br>☒ Unimpaired | Class 4 is unimpaired in this Plan. Class 4 consists of one creditor: Stange/Matate. The claim of Stange/Metate is disputed, but to the extent Stange/Metate has an allowed claim, Class 4 shall be paid as follows:<br>To the extent Class 4 is entitled to any recovery, it shall first be offset against any claim or |

Debtor Name:   Twisted Oak Winery, LLC            Case Number:   21-90484

| | | |
|---|---|---|
| | | recovery by the Debtor. If there is no net recovery by Debtor, in equal installments commencing July 1, 2022, for a period of 6 months. |
| Class 5 – **Insider non-priority unsecured creditors** | ☐ Impaired<br>☒ Unimpaired | Class 5 is unimpaired and will be paid only after all other allowed claims have been paid in full, and then on such terms as the Debtor and the holders of Class 5 agree. |
| Class 6 – **Equity security holders of the debtor** | ☐ Impaired<br>☒ Unimpaired | Equity Holder will retain its current membership interest in Debtor. |

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim** | A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:<br><br>(i) a proof of claim has filed been filed or deemed filed, and the Debtor or another party in an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of Distribution on a Disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of Disputed Claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed Executory Contracts and Unexpired Leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br><br>None. |
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than _____ days after the date of the order confirming this Plan. |

## Article 7: Means for Implementation of the Plan

7.01. With the business assets and ongoing operations, Debtor will have sufficient cash to pay all allowed unclassified claims, future allowed expenses of administration, and all Class 1 claims (nominal, if any), and to purchase the additional equipment and supplies needed to continue the manufacture of wine and to maintain operations.

The Debtor will have sufficient cash flow commencing in January 2022, and continuing thereafter, to make the monthly payments required for Classes 2, 3, and 4.

The Plan is relatively simple as only one creditor is impaired. Allowed unclassified claims and priority claims will be paid upon confirmation of the Plan. Subsequent unclassified claims (such as expenses of administration) will be paid as the Court allows them. Only one of the claims of the two secured creditors will be impaired: Mechanics Bank. SBA is not impaired and will receive their usual monthly payments $713 with no changes in interest rate, monthly payment, or maturity. Non-priority unsecured creditors will be paid 100 cents on the dollar over a 6 month period.

### Article 8: General Provisions

8.01. **Definitions and Rules of Construction**　The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

[Insert additional definitions if necessary].

8.02. **Effective Date**　The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03. **Severability**　If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04. **Binding Effect**　The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05. **Captions**　The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06. **Controlling Effect**　Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07. **Corporate Governance**　After confirmation of the Plan, the managing member will remain Jeff Stai. He presently receives compensation for his services, and he will continue to receive compensation for her services after confirmation of the Plan.

No other insiders will receive compensation for services after confirmation of the Plan.

8.08. **Retention of Jurisdiction**　The Court will retain jurisdiction after the effective date with respect to matters which are necessary to carry out the provisions of the Plan, including but not limited to the following matters:

(a) To hear and determine objections to claims, and to allow or disallow claims, including claims arising from the rejection of executory contracts;

(b) To hear and determine actions to avoid and recover preferential transfers under 11 U.S.C. § 547;

(c) To hear and determine disputes as to the nature, extent, and validity of liens;

(d) To fix and award compensation to professional persons;

(e) To recover all assets of the Debtor, wherever located, to the extent necessary for the consummation of this Plan;

(f) To interpret the provisions of the Plan, and to make any orders which may be necessary or convenient to carry out the provisions of the Plan; and

(g) To administratively close the case and to reopen it in the future.

### Article 9: Discharge

If the Debtor's Plan is confirmed under §1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in §1141(d)(6).

If the Debtor's Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in §1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in §1192; or

(ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Article 10: Other Provisions

[Insert other provisions, as applicable.]

| | | |
|---|---|---|
| 10.01 | **Plan Payment Disbursement** | Regardless of whether the plan is confirmed under §1191(a) (consensual) or §1191(b) (non-consensual), the subchapter V trustee's duties terminate with substantial consummation of the plan. All payments to creditors required by the plan will be made directly from Debtor. Payment will be by bank check, business check, wire transfer, or bank-to-bank systems such as Zelle or "bill pay," or any other method that may be agreed between Debtor and any specific creditor, which is designed to quickly, accurately, and inexpensively disburse the funds to creditors under the Plan. |
| 10.02 | **Remedies in the Event of Default after Confirmation** | If Debtor defaults in a payment or covenant under the Plan, Debtor shall cure the default, without consequence, within 30 days of the date of default. The 30-day cure period will begin upon receipt by the Debtor and its attorney of a notice of such default. If the Debtor fails to cure the default within the 30-day period, the affected creditor or party will be free to enforce its rights and collect its claim, as modified by the Plan. |

Respectfully submitted,

  /s/ Jeff Stai                                         Jeff Stai, Manager
[Signature of the Plan Proponent]                    [Printed Name]

Debtor Name: Twisted Oak Winery, LLC    Case Number: 21-90484

✘ /s/ Brian S. Haddix    Brian S. Haddix, Esq.
[Signature of the Attorney for the Plan Proponent]    [Printed Name]

Case Name: Twisted Oak Winery, LLC　　　　　　　　　Case No: 21-90484
PROJECTED POST-PETITION CASH RECEIPTS AND CASH DISBURSEMENTS
FOR THE PERIOD ENDING:　　　　　　　　　　　　　　Date of filing: week Feb 13, 2022

| | Month 5- Feb '22 | Month 6- Mar '22 | Month 7- Apr '22 | Month 8- May '22 | Month 9- Jun '22 | Month 10- Jul '22 | Month 11- Aug '22 | Month 12- Sep '22 | Month 13- Oct '22 | Month 14- Nov '22 | Month 15- Dec '22 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance: | 102,800 | 84,019 | 33,243 | 12,813 | 52,248 | 61,347 | 103,995 | 146,078 | 191,633 | 208,507 | 191,005 |
| **Cash Receipts:** | | | | | | | | | | | |
| Cash sales (ordinary course) | 99,875 | 28,625 | 31,125 | 108,250 | 79,750 | 92,250 | 136,000 | 97,250 | 85,500 | 119,750 | 57,500 |
| Rents / Leases collected | | | | | | | | | | | |
| Accounts Receivable collected | 1,480 | - | - | - | - | - | - | - | - | - | - |
| Proceeds from Sale of Asset(s) | | | | | | | | | | | |
| Borrowings | | | | | | | | | | | |
| Employee payroll tax withholdings | 5,619 | 5,619 | 5,889 | 5,956 | 5,990 | 5,990 | 5,990 | 5,990 | 5,990 | 5,990 | 5,990 |
| Sales tax collected | 7,241 | 2,075 | 2,257 | 7,848 | 5,782 | 6,688 | 9,860 | 7,051 | 6,199 | 8,682 | 4,169 |
| **Total Cash Receipts** | 114,215 | 36,319 | 39,270 | 122,054 | 91,522 | 104,928 | 151,850 | 110,291 | 97,689 | 134,422 | 67,659 |
| **Cash Disbursements:** | | | | | | | | | | | |
| Payments to Vendors (incl inv & A/P) | 73,636 | 16,901 | 10,361 | 25,120 | 26,956 | 5,907 | 25,222 | 8,000 | 13,375 | 82,000 | 11,125 |
| Administrative Expenses | 6,248 | 7,248 | 3,578 | 6,011 | 5,977 | 5,977 | 5,977 | 5,977 | 5,977 | 5,977 | 5,977 |
| Secured debt: Mechanics principal, interest and interest in arrears | - | - | - | - | - | - | - | - | 11,557 | 11,557 | 11,557 |
| Secured debt: SBA principal and interest | | - | 695 | 695 | 695 | 695 | 695 | 695 | 695 | 695 | 695 |
| Rent / Lease payments | 3,450 | 3,450 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| Pmts to Owner(s) / Officers/Insiders | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| Salaries / Commissions | 14,213 | 14,213 | 16,213 | 16,713 | 16,963 | 16,963 | 16,963 | 16,963 | 16,963 | 16,963 | 16,963 |
| Tax Pmts: | | | | | | | | | | | |
| Payroll Taxes-Employee | 5,619 | 5,619 | 5,889 | 5,956 | 5,990 | 5,990 | 5,990 | 5,990 | 5,990 | 5,990 | 5,990 |
| Payroll Taxes-Employer | 1,919 | 1,919 | 2,189 | 2,256 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 |
| Sales taxes | 7,241 | 2,075 | 2,257 | 7,848 | 5,782 | 6,688 | 9,860 | 7,051 | 6,199 | 8,682 | 4,169 |
| Real Property Taxes | | | | | | | | | | | |
| Other Taxes [excise] | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Payments to Professionals | 13,170 | 13,170 | 10,670 | 10,170 | 9,920 | 9,920 | 9,920 | 9,920 | 9,920 | 9,920 | 9,920 |
| Capital expenditures | - | 15,000 | - | - | - | - | 25,000 | - | - | - | - |
| **Total Cash Disbursements** | 132,996 | 87,095 | 59,701 | 82,619 | 82,422 | 62,280 | 109,767 | 64,735 | 80,816 | 151,924 | 76,536 |
| **Net increase/(Decrease) in cash** | (18,781) | (50,776) | (20,430) | 39,435 | 9,099 | 42,648 | 42,083 | 45,555 | 16,873 | (17,502) | (8,877) |
| **Ending cash balance** | 84,019 | 33,243 | 12,813 | 52,248 | 61,347 | 103,995 | 146,078 | 191,633 | 208,507 | 191,005 | 182,128 |

C:\Users\jbielenberg\OneDrive - James D. Bielenberg, Accountancy Corporation\JDB-Other\Consulting\TwistedOak\2021\083121 TOW-PL-BSALV2.2(RevisedProjection).xlsx