*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>TWISTED OAK WINERY, LLC,<br><br>　　　　Debtor. | Case No. 21-90484-E-11<br>Subchapter V |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

### MEMORANDUM OPINION AND DECISION
### CONFIRMATION OF SUBCHAPTER V PLAN

Twisted Oak, LLC commenced this voluntary Subchapter V Chapter 11 case on October 4, 2021, and has prosecuted it as the Debtor in Possession ("Debtor/Debtor in Possession"). There has been little in "sideshow fights" in this case, with the Parties in Interest focused on confirmation of the Subchapter V Chapter 11 Plan. As originally proposed, the Subchapter V Chapter 11 Plan drew opposition from the U.S. Trustee and Mechanics Bank. The Subchapter V Chapter 11 Plan now before the court is the Third Amended Subchapter V Chapter 11 Plan (Dckt. 72) ("Third Amended Plan"). As shown in the discussion below, the confirmation issue has been narrowed by the Debtor/Debtor in Possession and Mechanics Bank to the proper interest rate for the Bank's secured claim as required under *Till v. SCS Credit Corporation*, 541 U.S. 465 (2004).

There is an Objection to the Secured Claim of Mechanics Bank pending, the dispute being whether Mechanics Bank's liens include future agricultural products grown on the real property

subject to Mechanics Bank's Deed of Trust. The court has ordered these two parties to provide the court with supplemental briefing addressing the specific California real property and Commercial Law statutory provisions and case law governing liens on agricultural products. That matter is the subject of a separate decision and order.

## REVIEW OF THIRD AMENDED PLAN

The court summarizes the basic terms of the Third Amended Plan prosecuted by the Debtor/Debtor in Possession:

I.　　Class 1 - Priority Claims

　　　A.　None are identified – Not Impaired.

　　　B.　Any Allowed Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan or the date which such claim is allowed by a final non-appealable order.

II.　　Class 2 - Mechanics Bank, Secured Claim

　　　A.　Secured Claim, ($2,540,119.29), Proof of Claim 2-1 – Impaired.

　　　B.　Mechanics Bank shall retain its security interest according to the instruments and statutes creating same.

　　　C.　Mechanics Bank's principal shall be paid in full with interest of 4.50% per annum on 25 years amortization with a January 1, 2033 maturity date.

　　　　　1.　Interest and principal payments are $10,577.00 per month, commencing October 1, 2022, for 123 months and then a balloon payment for the remaining balance due on January 1, 2033.

　　　D.　Mechanics Bank's pre-petition interest shall be paid in full with 0% interest per annum in the amount of $1,000.00 per month, commencing October 1, 2022, then a balloon payment for the remaining balance due on January 1, 2033.

III.　　Class 3 - U.S. Small Business Administration, Secured Claim

　　　A.　Secured Claim, ($157,119.86), Proof of Claim 1-1 – Not Impaired.

　　　B.　Claim Paid pursuant terms of the original documents with no modifications by the Plan.

IV.　　Class 4 - Non-Insider Non-Priority Unsecured Claims, Stange/Metate

　　　A.　Only one creditor, Stange/Metate – Not Impaired.

　　　B.　The claim of Stange/Metate is disputed, but to the extent Stange/Metate has an allowed claim, it shall first be offset against any claim or recovery by the Debtor. If there is no net recovery by Debtor, in equal installments commencing July 1, 2022, for a period of 6 months.

V.  Class 5 - Insider General Unsecured Claims – Not Impaired

    A.  Insider general unsecured claims will be paid only if all other allowed claims have been paid in full on such terms Debtor and Class 5 agree on.

VI.  Class 6 - Equity Interests – Not Impaired.

    A.  Equity Holders retain current membership interest in Debtor.

Debtor states in the Third Amended Plan there are no known Priority Claims. However, the Internal Revenue Service has filed a priority unsecured priority claim in the amount of $2,016.45 and $200.00 in unsecured general claims. *See* Proof of Claim 3-1.

This claim does not present an impediment to confirmation. The Third Amended Plan provides for it to be paid in full on the effective date of said Plan.

## OBJECTIONS TO CONFIRMATION

**U.S. Trustee Objection to Confirmation and Amendment by Debtor/Debtor in Possession Resolving Objection**

The U.S. Trustee raised an objection to confirmation of the Third Amended Plan (Dckt. 85) on two grounds. The first was asserting that the Debtor/Debtor in Possession had not documented the proper service of the Plan and Notice of the hearing. The Plan Proponent Debtor/Debtor in Possession's Counsel reported that the following Service and Filing Requirements for Confirmation were complied with:

> March 4, 2022 Plan to be served along with a copy of the February 28, 2022 court Order Setting Hearing and Related Deadlines (Dckt. 73), a ballot for voting, a copy of a notice confirmation hearing on the trustee, United States Trustee, and all creditors and other parties in interest.
>
> Within Three Days of the above service, a certificate of service shall be filed demonstrating compliance. No such Proof of Service has been filed.
>
> April 4, 2022 Last Day to File Objections to Confirmation.
>
> April 14, 2022 Last Day to File Replies to Objections, Tabulation of Ballots, Proof of Service.

Counsel also reported that a Certificate of Service will be filed, it's omission arising from a clerical error when it was being uploaded. The Certificate of Service was filed on April 25, 2022, resolving this part of the U.S. Trustee's Objection. Cert. of Serv.; Dckt. 95.

The U.S. Trustee's second ground for the Objection to Confirmation was that the Third Amended Plan improperly terminated Trustee's duties if it is a non-consensual confirmation by the court. As addressed below, the Third Amended Plan is being confirmed as a non-consensual plan, the court having to rule on the opposition of Mechanics Bank, who has not consented to confirmation, concerning the proper interest rate that must be provided in the Third Amended Plan.

At the hearing on confirmation, the Debtor/Debtor in Possession stated an oral amendment to the Third Amended Plan to remove the section which provides for the discharge of the Subchapter V Trustee if there is a non-consensual confirmation of the said Plan. This amendment shall be stated in the order confirming the Third Amended Plan.

This resolves the Objections to Confirmation asserted by the U.S. Trustee.

**Mechanics Bank Objection to Confirmation**
**(Rulings Stated in the Following Section)**

Creditor Mechanics Bank filed an Objection to Confirmation (Dckt. 74) of the Second Amended Plan and a Supplemental Opposition (Dckt. 87) incorporating the prior Objection as the Objection to the Third Amended Plan, stating:

1. Debtor did not obtain an Order extending the time to confirm a Small Business Plan outside of forty-five days.

2. The case should be converted to a Chapter 7 liquidation.

3. The Third Amended Plan is not fair and equitable because:

    a. The Note and Commercial Guaranties are in almost three (3) years of default.

    b. Debtor's sole manager receives $10,000.00 per month in rent from Debtor but Creditor has not received anything in almost three (3) years.

    c. The Debtor has filed a series of proposed plans.

    d. The Third Amended Plan forces Creditor to accept an interest rate of 3.75% [which was increased to 4.5% under the Third Amended Plan] which is far below the current lending market.

    e. The Third Amended Plan is devoid of any reference to Debtor's principals and Guarantors of the Note and ability to contribute to the Plan.

///

|   |   |                                                                                                                                                                     |
|---|---|---------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   | f. | The Plan continues to use Creditor's cash collateral over Creditor's objection when Debtor has made no monthly adequate protection payments to Creditor. |

Dckt. 74.

### DISCUSSION AND RULING ON
### MECHANICS BANK OBJECTION TO CONFIRMATION

The court addresses the following Objections to Confirmation asserted by Mechanics Bank as follows.

    1.    The Note and Commercial Guaranties are in almost three (3) years of default.

Mechanics Bank states that this Bankruptcy Case was filed on October 4, 2021, and that there were almost three years defaults by Debtor prior to the filing of this case. That there are pre-petition defaults is neither surprising nor a reason for denying confirmation of a plan.

Mechanics Bank does state that it worked with the Debtor concerning the defaults during the three-year period prior to the commencement of this Bankruptcy Case, but no resolution could be reached and a foreclosure sale was scheduled for October 5, 2021. Objection to Confirmation, p. 3:1-4; Dckt. 74. The October 4, 2021 filing of this case derailed the scheduled foreclosure sale.

Merely because a bankruptcy case is filed to derail a foreclosure sale, even when the parties had attempted to reach a resolution outside of bankruptcy, does not bar confirmation of a plan.

    2.    Debtor's sole manager receives $10,000.00 per month in rent from Debtor but Creditor has not received anything in almost three (3) years.

This assertion was not stated in the Objection, but the Declaration of Nicola Merrifield-Olivia, a Senior Vice President with Mechanics Bank. Dec. (Dckt. 75 ¶ 12.b.). Ms. Merrifield-Olivia directs the court to the Monthly Operating Report for December 2021 (Dckt. 56 at p. 6) which has the $10,000.00 line item stated to be for rent. This is also shown on the Monthly Operating Report for: January 2022, Dckt. 67 at p. 17; February 2022 (listing it as $3,000.00 rent and $7,000.00 draw for "Jeff and Mary"), Dckt. 84 at p. 13; March 2022 ($3,000.00 rent and $7,000.00 draw for "Jeff and Mary"), Dckt. 89 at p. 13; April 2022 ($7,000.00 draw for "Jeff and Mary"), Dckt. 119 at p. 11; and May 2022 ($7,000.00 draw for "Jeff and Mary"), Dckt. 120 at p. 25.

This appears to be the monthly compensation for members of the Debtor Limited Liability

Company being paid for operating the business. The Debtor/Debtor in Possession confirmed that there are no rents currently being generated. As to the rent paid to an insider, the Debtor/Debtor in Possession confirmed that such "rent payments" have terminated. During this case and under the Third Amended Plan, the Debtor/Debtor in Possession will not be making payments to the insider for the tasting room.

> 3. The Debtor has filed a series of proposed plans. Objection, p. 3:8-9; Dckt. 74.

The "series" of proposed plans in this case consist of an original and three amended plans. This occurred over a period from December 2, 2021, (Dckt. 44) through February 28, 2022, (Dckt. 72). This was in a modest three-month period early in the case, not an extended, drawn out, overly delayed process of getting a plan before the court. The Debtor/Debtor in Possession may have stumbled a bit in getting a Subchapter V Plan in "final form" before the court, but nothing indicates that it was part of a bad faith scheme or inability to prosecute this case. This is not a basis to deny confirmation.

> 4. The plan forces Creditor to accept an interest rate of 3.75% which is far below the current lending market.

This issue of the proper interest rate for Mechanics Bank, which has alternatively argued, and has provided conflicting testimony under penalty of perjury, that its claim is undersecured and then when facing a possible 11 U.S.C. § 506(a) bifurcation of its claim, that it was oversecured, is addressed by the court below in this Decision.

> 5. The Plan is devoid of any reference to Debtor's Principals and Guarantors of the Note and ability to contribute to the Plan. Opposition, p. 3:26-27; Dckt. 74.

While asserted, Mechanics Bank does not state that such is necessary for confirmation. Rather, it is asserted that this just renders the plan "not fair and equitable." The "not fair and equitable" argument of Mechanics Bank focuses on the proper interest for its secured claim. There is not an economic analysis or evidence showing that the plan is not feasible in light of the asserted omitted information. This legal conclusion is also cut and pasted into the Declaration of Nicola Merrifield-Olivia. Dec.,¶ 12.c..; Dckt. 75. Mechanics Bank offers no evidence or legal basis why

this legal conclusion bars confirmation.

    6.    The Plan continues to use Creditor's cash collateral over Creditor's objection when Debtor has made no monthly adequate protection payments to Creditor. Objection, ¶ d; .Dckt. 74.

Mechanics Bank offers no legal basis why the failure to make adequate protection payments is a bar to confirmation. If adequate protection payments were necessary and proper, Mechanics Bank was free to seek such relief. None was sought. The failure of Mechanics Bank to act, if seeking such relief was proper, is not a bar on confirmation of a plan by the Debtor/Debtor in Possession.

Additionally, Mechanics Bank asserted that the "small business plan" in this case was not brought for confirmation timely. It is asserted that for a "small business plan," confirmation must occur within 45 days of filing of the proposed plan, Mechanics Bank citing to 11 U.S.C. §§ 1129(e) and 1121(e) [in the pleading it is stated as 11 U.S.C. § 1121(3), which appears to be a typo].

However, 11 U.S.C. § 1181 makes 11 U.S.C. § 1129(e) not applicable in Subchapter V cases. See also, 11 U.S.C. § 101(51C), defines a "small business case," stating, "

    (51C) The term "small business case" means a case filed under chapter 11 of this title in which the debtor is a small business debtor and has not elected that subchapter V of chapter 11 of this title [11 U.S.C. §§ 1181 et seq.] shall apply.

*See* 7 Collier on Bankruptcy P 1129.08[e] for further discussion. Here, Debtor/Debtor in Possession has elected that Subchapter V of Chapter 11 applies to this case. Petition, § 8; Dckt. 1.

**Determination of Proper *Till* Interest Rate for Mechanics Bank's Claim and Confirmation of Third Amended Plan**

Mechanics Bank initially objected to there being a 3.5% interest rate in a prior Plan for its secured claim, stating that under the *Till* analysis, that is the current prime rate, and there are no upward adjustments for the risk it is facing over the ten-year repayment period under the Plan.

In the Third Amended Plan, the interest rate has been increased to 4.5%. The court will consider any additional "risk" adjustment necessary in light of Mechanics Bank's adequate protection, limitations thereto, time period for payment, and other factors.

The Parties agree that the determination of the interest rate under this Third Amended Plan is now left for the court to determine, applying the principles set by the Supreme Court in *Till v. SCS*

*Credit Corporation*, 541 U.S. 465 (2004).

**Value of Mechanics Bank's Collateral**

  In this Bankruptcy Case, Mechanics Bank has provided the court with conflicting values for its collateral. These include the following:

  A. Proof of Claim 2-1, filed December 13, 2021.

    1. Mechanics Bank states under penalty of perjury that its claim is ($2,540,119.29) and the collateral securing the claim has a value of $4,641.208.00 (stating only the value of the real estate collateral).

      a. This information under penalty of perjury states that Mechanics Bank has an equity cushion (the value of the collateral in excess of the secured claim) of eighty-two and seven tenths percent (82.7%).

  B. Supplemental Opposition to Confirmation, Dckt. 109.

    1. In the Supplemental Opposition Mechanics Bank asserts that the real property securing its Claim has a value of $3,000,000.00. *Id*., ¶ 9.c.

      a. Mechanics Bank computes its claim to have increased to ($2,600,000.00) (including additional interest, fees, costs, and expenses). Mechanics Bank then includes 8% for costs of sale of commercial property (the 8% costs of sale being commonly used for sale of residential real property, not commercial property [for which the cost is generally lower]), to compute that there is no equity cushion for Mechanics Bank. *Id*.

      b. A not properly authenticated (no testimony of the appraiser provided) Appraisal Report is identified as being provided as Exhibit B in opposition to confirmation. *Id*.

        (1) The Apprisal Report states that the $3,000,000.00 market value of the real property does not include any of the wine making equipment or other collateral securing Mechanics Bank's Claim. Dckt. 110 at p. 12.

  At the final hearing on Confirmation, Mechanics Bank first argued that it was undersecured (asserting that its claim was larger in amount than the value of its collateral). Then, Mechanics Bank realized if it prevailed in its arguments that its claim is undersecured, then its claim would be subject to valuation pursuant to 11 U.S.C. § 506(a) and be bifurcated, with a portion being a secured claim equal to the amount of the collateral and an unsecured claim for the balance (upon which it would not be entitled to be paid interest, or the claim in full). It was after this discussion that Mechanics Bank re-reversed its position, stating that its claim was oversecured, using a value of $3,000,000.00 for its collateral.

**Consideration of Adequate Protection Factors**

Mechanics Bank asserts that it is not adequately protected by the interest rate in the Third Amended Plan, especially when considering the pre-petition and post-petition defaults in payments to Mechanics Bank. Mechanics Bank argues that it must be paid a higher interest rate to "adequately protect" its interests in its collateral and for the risks it faces through the Third Amended Plan.

The U.S. Supreme Court addressed the principle of bankruptcy adequate protection in *United Saving Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370, in the context of relief from the automatic stay, referencing the statutory definition in 11 U.S.C. § 361 which provides:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

The Supreme Court's discussion of the interests to be adequately protected concludes with,

> The language in those other provisions, and the substantive dispositions that they effect, persuade us that the "interest in property" protected by § 362(d)(1) does not include a secured party's right to immediate foreclosure.

*Id.* at 371.

For confirmation of bankruptcy plans and the treatment of a secured claim in which the plan terms modify the original contract (such as changing the interest rate and payment terms), the U.S. Supreme Court addresses this issue in *Till v. SCS Credit Corporation*, 541 U.S. 465 (2004). Mechanics Bank does not cite to this case and the *Till* factors in its opposition to confirmation. Dckt. 74, but instead discusses the terms for making a new loan today. At the April 22, 2022 hearing, counsel for Mechanics Bank did mention *Till*, stating that a 1% point increase of the interest to 4.5% did not adequately protect/compensate Mechanics Bank for the extraordinary risk it faces in the payments of its claim over the next ten years. The court addresses below the "extraordinary"

risk factors identified by Mechanics Bank.

The court has Mechanics Bank Proof of Claim 2-1 filed on December 13, 2021. Based on the valuation of its collateral as stated (under penalty of perjury) by Claim Mechanics Bank in Proof of Claim 2-1, there is an 85% equity cushion. Then, there is an unauthenticated appraisal stating that the real property collateral has a value of $3,000,000.00. While less than the $4,000,000.00+ asserted by Mechanics Bank under penalty of perjury in Proof of Claim 2-1, a value of $3,000,000.00 still provides an equity cushion.

In advancing its arguments of not being adequately protected and needing a much greater interest rate under the Plan for all of the "risks" faced, Mechanics Bank has provided the testimony under penalty of perjury of Mechanics Bank's Senior Vice President, Nicola Merrifield-Olivia. This "testimony" contains significant "cut and paste" legal arguments and assertions from the Opposition pleadings prepared by Mechanics Bank's counsel. When the court sees this kind of "cut and paste testimony" and a lay person witness provides his or her legal opinions, the credibility of such witnesses is substantially undercut.[1]

In reviewing the Opposition as written, the general proposition presented appears not to be whether the bankruptcy plan properly provides for the repayment of the secured claim as permitted under the Bankruptcy Code, but that Mechanics Bank should be paid more than its claim for the Debtor to atone for past financial sins.

---

[1] For Ms. Nicola Merrifield-Olivia's testimony, the Federal Rules of Evidence require:

Rule 602. Need for Personal Knowledge

A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Fed. R. Evid. 602. In reviewing the Declaration, it appears to be less personal knowledge testimony and more "if you tell me to sign it Mr. Attorney so we can prevail, just put it in front of me." Testimony provided in a declaration is not any less important, significant, and judicially precious than testimony presented live in court.

Fortunately for Mechanics Bank, this questionable and verbatim cut and paste "testimony" did not prejudice it over facts effecting the court's ruling. There was little dispute over the facts, though substantial arguing occurred.

**Determination of Proper *Till* Interest Rate for Mechanics Bank's Claim**

Here, though Mechanics Bank has taken a series of shifting positions and assertions of the value of its collateral, Mechanics Bank has admitted to being oversecured, stating at the final hearing that it would assert that the real property collateral has a value of $3,000,000.00.

Mechanics Bank's arguments have really centered on the amount of interest it will be paid, asserting that the contractual 7.5% non-default interest rate is necessary. That Mechanics Bank wants its contract interest rate does not trump what Congress has provided in the Bankruptcy Code and the rulings of the Supreme Court.

In *Till*, the U.S. Supreme Court was wrestling with the appropriate amount of interest under the Chapter 13 plan to be paid the creditor with the secured claim so that it would receive at least the allowed amount of its claim as of confirmation (commonly considered a present value calculation). The discussion by the Supreme Court includes expressly rejecting the creditor's contention that the interest was to be set at what the creditor could make new loans at if it could get paid in one lump sum on confirmation. *Till v. SCS Credit Corp.*, 541 U.S. 465, 471 (2004). In determining the correct interest rate for a cramdown (non creditor agreed plan term) payment in the bankruptcy plan, the Supreme Court adopted the "formula approach," states as follows:

> The formula approach has none of these defects. Taking its cue from ordinary lending practices, the approach begins by looking to the **national prime rate, reported daily in the press**, which reflects the financial market's estimate of **the amount a commercial bank should charge a creditworthy commercial borrower to compensate** for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a **greater risk of nonpayment** than solvent commercial borrowers, **the approach then requires a bankruptcy court to adjust the prime rate accordingly**. The appropriate size of that risk adjustment depends, of course, on **such factors as** the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. The court must therefore hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment. Some of this evidence will be included in the debtor's bankruptcy filings, however, so the debtor and creditors may not incur significant additional expense. Moreover, **starting from a concededly low estimate and adjusting upward places the evidentiary burden squarely on the creditors**, who are likely to have readier access to any information absent from the debtor's filing (such as evidence about the "liquidity of the collateral market," post, at 1973 (SCALIA, J., dissenting)). **Finally, many of the factors relevant to the adjustment fall squarely within the bankruptcy court's area of expertise.**

> Thus, unlike the coerced loan, presumptive contract rate, and cost of funds approaches, the formula approach entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings. Moreover, the **resulting "prime-plus" rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate**, and the characteristics of the loan, **not on the creditor's circumstances or its prior interactions with the debtor.** For these reasons, the prime-plus or formula rate best comports with the purposes of the Bankruptcy Code.

*Id*., 478-480 (emphasis added).

The Supreme Court did not establish a scale for the above prime rate adjustment, but noted that such adjustments range between 1% and 3%. *Id*., 480. The interest rate adjustment is to be for minor amounts of risk, with the Supreme Court further stating,

> Together with the cramdown provision, this requirement obligates the court to select a rate high enough to compensate the creditor for its risk but not so high as to doom the plan. If the court determines that the likelihood of default is so high as to necessitate an "eye-popping" interest rate, 301 F.3d, at 593 (Rovner, J., dissenting), the plan probably should not be confirmed.

*Id*., 480-481.

**Interest Rate, Proper *Till* Calculation**

In the Third Amended Plan now before the court, Debtor/Debtor in Possession provides a 4.5% interest rate for Mechanics Bank's secured claim. At the time of the April 21, 2022 hearing, the parties did not dispute that the then current prime rate was 3.5%.

Mechanics Bank does not assert that the Plan is not feasible and that Mechanics Bank does not stand a likelihood of being paid. Rather, just that the interest rate should be higher because if a borrower "like the Debtor" were forced to go to the marketplace, the interest rate would be 9%. Objection, p. 3:12-18; Dckt. 74.

Mechanics Bank also argues that interest rates will go up in the future (as everyone, including lenders currently setting the prime interest rate at 3.5% know from the news), thus Mechanics Bank is entitled to an enhancement over the prime rate. In making such argument, Mechanics Bank is contradicting the U.S. Supreme Court which states that such "opportunity costs" are included in the prime rate. *Till v. SCS Credit Corp*., 541 at 478-479.

At the April 21, 2022 hearing, Mechanics Bank added the additional argument that as interest rates go up, the value of real estate declines. While stating it as an apocalyptic, Great Recession

category pending real estate risk, nothing has been presented to the court that current lending, consumer and commercial, have approached the wild, liar, negatively amortizing, continually rolling over and refinancing loans that consumers and businesses could not repay, and the like of which were seen in the Great Recession, the Dot-Com Bubble Burst, the economic drop in the early 1990's, and the lending implosion of domestic and foreign loans in the early 1980's.

Rather, it appears that there will be a "more normal" drop in real estate prices (which from their meteoric high with the historically low sub-3% interest rates recently seen) based on how much the monthly payment is and the ability to repay the loan from the business operation. As interest rates go up, the borrower can afford to borrow less principle for the purchase as the amount of interest it has to pay increases.

As of the June 16, 2022 confirmation hearing, the prime rate was 4.75%.[2] The Federal Reserve Bank reports that the prime rate started at 4.38% June 1, 2022, and increased to 4.85% July 1, 2022.[3]

In considering the adjustments to the prime rate, the court considers Plan provisions in the event of a default. The proposed Third Amended Plan provides for a possible event of a default, stating:

> If Debtor defaults in a payment or covenant under the Plan, Debtor shall cure the default, without consequence, within 30 days of the date of default. The 30-day cure period will begin upon receipt by the Debtor and its attorney of a notice of such default. If the Debtor fails to cure the default within the 30-day period, the affected creditor or party will be free to enforce its rights and collect its claim, as modified by the Plan.

Third Amended Plan, ¶ 10.02; Dckt. 72.

Thus, post-confirmation, the binding contract (the confirmed Plan) between Debtor and Mechanics Bank provides that upon Mechanics Bank notifying the Debtor/Debtor in Possession of a default, then within 30 days of such notice the Debtor/Debtor in Possession must cure the default

---

[2] https://newsroom.bankofamerica.com/content/newsroom/home/prime-rate-information.html.

[3] https://www.federalreserve.gov/datadownload/Chart.aspx?rel=H15&series=6fa2b8138e0eafe0ad6cde24ba2307f5&lastobs=7&from=&to=&filetype=spreadsheetml&label=include&layout=seriescolumn&pp=Format

or Mechanics Bank will be free (without further order of the court), to enforce its rights. There are little risks or roadblocks then in connection with enforcing Mechanics Bank's rights after a default. The Third Amended Plan has stripped away any "bankruptcy delays" that Mechanics Bank has found troubling as part of this confirmation fight.

Thus, confirmation of the Third Amended Plan does little to alter or limit Mechanics Bank in the exercise of its rights in the event of a default. Further, through the Third Amended Plan, Mechanics Bank will be receiving substantial money payments.

### Consideration of Payment of Mechanics Bank Claim Provided in the Third Amended Plan

In the restructuring of Mechanics Bank's Claim, the Third Amended Plan breaks the payment of the Claim into two parts. The first is the pre-petition interest arrearage ("Claim for Interest Arrearage"). The second is the balance of the Claim ("Claim in Excess of Interest Arrearage").

#### Pre-Petition Interest Arrearage

Starting October 2022, Mechanics Bank will be paid $1,000.00 a month, and the balance of the pre-petition interest arrearage will be paid in full on January 1, 2033. Proof of Claim 2-1 does not include a breakdown of the component parts of the Claim. In going through the various pleadings filed by Debtor and Mechanics Bank, the court could not identify a statement of the pre-petition interest amount.

However, in connection with the related Objection to the Claim of Mechanics Bank, a copy of a Loan Payoff Statement is provided by Mechanics Bank as Exhibit C (Dckt. 112). That Payoff Statement lists unpaid interest computed to May 2, 2022, to be ($402,551.89). This Bankruptcy Case was filed on October 4, 2021, seven months earlier. With a claim of around $2,500,000.00, of which $400,000.00 is interest, seven months of post-petition interest of 7.5% on a principal balance (including fees and expenses) of $2,100,000.00, would be approximately $91,875.00. Thus, it appears that the pre-petition arrearage claim would be approximately ($311,000.00).

Payments of $1,000.00 a month for the 123-month period of October 2022 through December 2032 will total $123,000.00. This reduces the pre-petition arrearage to approximately

($188,000.00) to be paid off in one lump sum.[4]

<u>Payment of Claim in Excess of Interest Arrearage</u>

Using the ($2,583,023.00) amount in the Loan Payoff Statement (Ex. C, Dckt. 112), and subtracting the ($311,000.00) for the pre-petition interest provided for above, that would leave approximately ($2,272,023.00) to be paid for the Claim in Excess of Interest Arrearage. The Third Amended Plan provides for monthly payments of $10,557.00 commencing October 2022 by the Debtor/Debtor in Possession through and including December 2032. This is for a ten-year and three-month period, totaling $1,298,511.00 in Plan payments – a very substantial payment over the ten-year period. The balance of the Claim in Excess of Interest Arrearage will be paid in one lump sum on January 2033.

<u>Little Risk is Imposed on Mechanics Bank
by the Third Amended Plan</u>

In considering an appropriate risk adjustment, as directed the court considers factors such as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan as required by the Supreme Court. Here, the Third Amended Plan locks the Debtor/Debtor in Possession into making substantial monthly payments to Mechanics Bank.

In looking at the Projected Post-Petition Cash Receipts and Disbursements attached to the Third Amended Plan (Dckt. 72 at p. 8), the following amounts are shown for payments to creditors through the Plan:

    Class 2....Mechanics Bank...................................$11,557 a month

    Class 3....Small Business Administration...............$695.00 a month

///

---

[4] The court not being able to identify a clear statement of the component parts of the Claim by the various parties, the number used by the court in this Decision are estimates and not a determination of such amounts. These estimates are useful in considering the adequate protection afforded to Mechanics Bank and the prime rate enhancement that is appropriate for what Mechanics Bank faces through the Third Amended Plan.

In this confirmation process, the court has not been presented with evidence or a dispute as to the dollar amount of the component parts of Mechanics Bank's claim. If a dispute arises at a later date, the court can address it then.

|     | Class 4....Stange/Metate.................. Disputed -No Proof of Claim Filed |
|-----|---|
|     | (If allowed claim, paid in six monthly payments)[5] |

Thus, for this Third Amended Plan, Mechanics Bank is the focus of the Plan and the one creditor that Debtor/Debtor in Possession must pay to keep the Third Amended Plan, the business, and the assets from blowing up and losing it all.

Adding to the unique priority of attention for Mechanics Bank, the Third Amended Plan includes a "death switch," providing that if the Debtor/Debtor in Possession defaults, then Mechanics Bank need only give a thirty (30) day notice of default to Debtor. After such notice, Mechanics Bank is "off to the races" to enforcing its rights in all of its collateral.

If Debtor does not cure the default within the thirty (30) days after receipt of the notice of default, then Mechanics Bank is free, without further order of the court or any other judicial proceedings in this court, to enforce its rights and collect on its Claim.

This Third Amended Plan places little risk on Mechanics Bank. The Third Amended Plan mandates substantial monthly of principal and interest to Mechanics Bank. They are not quarterly semiannual, annual, biannual, half a decade (every five years), or a lump sum payment ten years in the future. The Debtor/Debtor in Possession's feet are to the fire each month.

There are no other Third Amended Plan creditors of any significant amount pounding on the Debtor/Debtor in Possession to be paid. It is Mechanics Bank that is in the center of Debtor/Debtor in Possession's screen going forward.

Here, while there is little risk for Mechanics Bank imposed by the Third Amended Plan, the court does also consider that this is a bankruptcy plan and there is some inherent additional work that goes with that for a creditor. Therefore, under all of these facts and circumstances the court adds a 1.00% *Till* adjustment to the 4.75% prime rate, for a Third Amended Plan interest rate of 5.75% for the non pre-petition interest arrearage portion of Mechanics Bank's Claim.

To the extent that Mechanics Bank views there being a greater "risk" in getting the monthly payments and having the loan paid off in January 2023, those "risks" would appear to lie in

---

[5] On Schedule E/F, a contingent, unliquidated, and disputed general unsecured claim in the amount of ($7,800.00) is listed for "Stephen Stange d/b/a Metate Hill, Inc." The basis for this listed contingent, unliquidated, and disputed claim is stated to be "Unbargained for Late Fees."

Mechanics Bank inability to enforce its rights. One default and failure to cure, Mechanics Bank can drop the debt enforcement hammer.

The *Till* interest rate for the Third Amended Plan Class 3 non-pre-petition interest arrearage claim of Mechanics Bank is 5.75%.

Computation of Monthly Principal and Interest Payment
for the 5.75% Interest Rate

In the Third Amended Plan, it provides that non-pre-petition interest arrearage portion of Mechanics Bank's Claim shall be amortized over 25 years, with the court set 5.75% interest, with monthly payments commencing October 2022, and the balance due in full on January 1, 2032. Third Amended Plan, ¶ 4.01; Dckt. 72.

In the Third Amended Plan, it states that the amortization of Mechanics Bank's non-pre-petition interest arrearage portion of the claim will have monthly principal and interest payments of $10,557.00. It does not state what the claim balance used by Debtor/Debtor in Possession to compute the 25-year amortization.

As noted above, in a Loan Payoff Statement filed by Mechanics Bank in opposition to Debtor/Debtor in Possession's Objection to Claim, the total claim balance is stated to be ($2,583,023.57). Exhibit C; Dckt. 112. Additional information on the Loan Payoff Statement is that the principal balance is ($1,856,985.31). *Id*.

In backwards engineering the payment terms in ¶ 4.01 of the Third Amended Plan, a 25-year amortization with a 4.5% interest rate to provide for monthly principal and interest payments of $10,557.00 would be based on a principal amount of ($1,899,500.00). This is greater than that stated by Mechanics Bank, but may include cost advances and expenses that are included in the ongoing principal balance.

The court uses the ($1,899,500.00) amount stated by Debtor/Debtor in Possession for the balance upon which the 5.75% interest for the twenty-five year amortization is computed under the Third Amended Plan. Using the Microsoft Excel Loan Calculator program, the court computes the month principal and interest payment for a ($1,899,500.00) balance amortized over twenty-five

years at 5.75% interest to be $11,948.88 a month.[6]

**RULING**

With the amendment striking the provision in ¶ 10.01 of the Third Amended Plan terminating the Subchapter V Trustee in the event of a non-consensual confirmation of said Third Amended Plan and the court having set the Third Amended Plan interest rate at 5.75% for the Class 2 secured claim, the Third Amended Plan complies with the requirements of 11 U.S.C. § 1191, which incorporates the provisions of § 1129(a), with the exception of subparagraph (a)(15) of that § 1129(a). Not all classes of impaired claims have accepted the plan, and confirmation is made pursuant to 11 U.S.C. § 1191(b) as a non-consensual plan.

The Third Amended Plan filed by the Debtor/Debtor in Possession on February 28, 2022, Dckt. 72, as further amended to provide:

> ¶ 10.01 is amended and the provision for the termination of the Subchapter V Trustee in the event of a non-consensual plan confirmation is stricken.
>
> ¶ 4.01 is amended to state:
>
>> Class 2 is impaired by this Plan. Mechanics Bank shall retain its security interest according to the instruments and statutes creating same.
>>
>> Class 2 principal shall be paid in full with interest at 5.75% per annum on 25 years amortization with a January 1, 2033, maturity date, with interest and principal payments of $11,948.88 per month, commencing October 1, 2022, and continuing for 123 months, then a balloon payment for the remaining balance due January 1, 2033.
>>
>> Class 2 accrued pre-petition interest shall be paid in full with 0% interest per annum in the amount of $1,000 per month, commencing October 1, 2022, then a balloon payment for the remaining balance due January 1, 2033.

The court shall issue a separate order confirming the Third Amended Subchapter V Plan (Dckt. 72) with the amendments stated in this Decision.

Dated: October 5, 2022

_____
RONALD H. SARGIS, Judge
United States Bankruptcy Court

---

[6] To the extent that Mechanics Bank asserts that interest accrues on a greater portion of its claim, that is a battle for another day. As noted above, in confirming the Third Amended Plan, the court is not making determinations of the amounts of the claim.

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney(s) for the Trustee** (if any) | Tom R. Normandin, Esq.<br>2122 North Broadway, Ste. 200<br>Santa Ana, CA 92706-2614 |